UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAULA PATTERSON,

Plaintiff,

v.                                    CASE No. 5:10-CV-5-Oc-10TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

_____

REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.* Because the decision of the Commissioner of Social

Security is supported by substantial evidence and contains no reversible error,

I recommend that the decision be affirmed.

I.

The plaintiff, who was fifty-eight years old at the time of the

administrative decision and who has some college education, has worked

---

*This matter comes before the undersigned pursuant to the Standing Order of this
court dated January 5, 1998. See also Local Rule 6.01(c)(21).

primarily as a data entry clerk (Tr. 473, 474, 477). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to nonalcoholic steatohepatitis, carpal tunnel syndrome, hypertension, depression, bilateral knee problems, morbid obesity, and uterine cancer (Tr. 122). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of bilateral knee degenerative joint disease status post bilateral arthroscopy, urinary incontinence, and obesity (Tr. 34).   He concluded that these impairments restricted the plaintiff as follows (Tr. 39):

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in [the] Social Security Regulations; limited to occasional kneeling; must avoid crawling and climbing of ladders, ropes, and scaffolds; limited to no more than occasional pushing and pulling with the lower bilateral extremities, including operation of levers unless the lever requires less than 5 pounds to operate; must avoid prolonged (6 hours of an 8 hour shift) exposure to temperatures less than 30 degrees Fahrenheit along with extreme wetness or humidity; must avoid exposure to large, moving machinery and unprotected heights; must be

-2-

> allowed brief access to a restroom every 2-2 ½
> hours during the day and to wear an incontinence
> protection pad.

The law judge determined that these limitations did not prevent the plaintiff

from returning to prior employment as a data entry clerk (Tr. 42).

Accordingly, the law judge decided that the plaintiff was not disabled (Tr.

43). The Appeals Council let the decision of the law judge stand as the final

decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits

and supplemental security income, a claimant must be unable "to engage in

any substantial gainful activity by reason of any medically determinable

physical or mental impairment which ... has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the

terms of the Social Security Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42

U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant

-3-

is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  See 20 C.F.R. 404.1520, 416.920.  One of the threshold inquiries (step two) is whether a claimant has a severe impairment.  20 C.F.R. 404.1520(c), 416.920(c).  An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a), 416.921(a).  If an impairment is not severe, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g).

III.

The law judge concluded that the plaintiff suffers from severe impairments of knee problems, urinary incontinence, and obesity, and that they limit the plaintiff's residual functional capacity to a restricted range of light work (Tr. 34, 39). However, he found further that, assuming the plaintiff had a second knee replacement (which did, in fact, take place) and that the plaintiff was limited to sedentary work, she could still perform her prior past work as a data entry clerk (Tr. 43). The plaintiff asserts four challenges to the decision, none of which demonstrates reversible error.

Before turning to the plaintiff's contentions, it is appropriate to acknowledge that I was skeptical that the plaintiff, who, during the relevant

period, was in her mid-to-late fifties, had two bad knees and weighed over 300 pounds, could perform the demand of light work that she had to stand or walk for about six hours in an eight-hour day. However, an opinion by a reviewing physician that the plaintiff could perform light work helped assuage that skepticism (Tr. 413). Moreover, the plaintiff did not directly challenge the law judge's finding that the plaintiff's residual functional capacity included the capacity to stand or walk for about six hours. In all events, the law judge expressly indicated that he would recede from that finding if, as was the case, the plaintiff had a second knee replacement.

A. 1. The closest the plaintiff came to challenging the law judge's determination of the plaintiff's residual functional capacity is her contention that the law judge did not give proper weight to the opinion of a treating physician (Doc. 18, pp. 8-14). This argument is unpersuasive and, in any event, does not demonstrate reversible error.

Dr. Homer Knizley, Jr., a specialist in endocrinology, has treated the plaintiff's various ailments, including diabetes, liver problems, knee pain, and obesity, for many years. In a Medical Source Statement form filled out on May 6, 2008, Dr. Knizley opined, among other things, that the plaintiff,

beginning on March 1, 2006, can stand or walk less than two hours in an eight-hour workday, must periodically sit and stand throughout the day, and was limited in pushing and pulling with both upper and lower extremities (Tr. 424-26). He also believed that the plaintiff had postural limitations and could not crouch, crawl, or stoop (Tr. 425). He further indicated that the plaintiff had some manipulative limitations (id.). He opined that the plaintiff could not sustain work activity for an eight-hour day with normal breaks for a forty-hour work week (Tr. 426).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge specifically considered Dr. Knizley's opinions, which were set forth on a form, in determining the plaintiff's residual functional capacity (Tr. 42). However, he assigned Dr. Knizley's opinions

little weight because: (1) there was limited objective evidence of physical impairments to establish the degree of disability Dr. Knizley had opined; (2) the doctor failed to "frankly address the paucity of the objective evidence compared to the claimant's subjective complaints and self-reported symptoms;" and (3) Dr. Knizley's opinion is inconsistent with the medical evidence in its entirety (id.). These reasons adequately support the law judge's determination to discount the form filled out by Dr. Knizley.

The plaintiff argues that there is "plenty of objective evidence" to support Dr. Knizley's opinion regarding the plaintiff's limitations on standing and walking, and her inability to crouch, crawl, or stoop (Doc. 18, pp. 10-11). The plaintiff supports her contention with the January 2007 opinion of treating physician Dr. Edward M. Jaffe, who diagnosed the plaintiff with "moderately advanced bilateral knee varus degenerative joint disease" (id., p. 10; Tr. 236). Dr. Jaffe noted that an x-ray of the plaintiff's knees showed "near complete loss of articular cartilage height in the medial compartments of both knees and peripheral osteophytes" (Tr. 236).

The law judge discussed Dr. Jaffe's opinion and, further, he recognized that the plaintiff, upon examination by Dr. Jaffe, had a satisfactory

gait with recommendations of injections, weight loss, and aqua therapy (Tr. 40). The law judge then went on to discuss in detail the medical evidence that was inconsistent with the plaintiff's allegations of disabling knee pain and functional limitations (Tr. 41-42):

> From January 12, 2007, through March 1, 2007, the claimant attended physical therapy at ReQuest Physical Therapy. Progress notes show that the claimant's range of motion of the knees improved as well as her quadriceps strength and upright endurance. Her gait appeared antalgic due to osteoarthritis. Progress notes also shows that the claimant attended 12 physical therapy sessions, but cancelled 7 sessions. Her rehabilitation potential appeared good (Exhibit 18F).
>
> ...
>
> She underwent bilateral knee arthroscopic surgeries. The medical evidence shows that the claimant did relatively well after surgeries. In June 2006, examination demonstrated only little crepitus of both knees. In December 2006 the claimant's gait and station appeared normal. The claimant was not able to squat (probably related to obesity) but she was able to walk on toes and heels (Exhibit 10F/1). In January 2007 the claimant walked slowly but her gait appeared satisfactory. There was no evidence of instability (Exhibit 3F).
>
> ...
>
> Despite her obesity and degenerative joint disease, the claimant is able to ambulate without the use of a cane. Physical examinations have failed to show

> evidence of motor, sensory or reflexes
> abnormalities (Exhibit 12F). Physical therapy
> notes show that the claimant's range of motion and
> strength of the knees improved with therapy.

These findings support the law judge's determination that the plaintiff is not
totally disabled due to her knee problems.

The plaintiff also states that "[t]here are no other reports from
other treating sources or examining sources disagreeing with the limitations
outlined by Dr. Knizley" (Doc. 18, p.12). That statement is not accurate. In
fact, Dr. Knizley had submitted an earlier form that contradicted his May
2008 form. Thus, while Dr. Knizley opined in the form at issue that the
plaintiff's disabling limitations began in March 2006, Dr. Knizley opined in
a different questionnaire dated December 13, 2006, that the plaintiff had no
motor deficits in the extremities, had normal grip and extremity strength,
could walk on her toes and heels, did not need an assistive device for
ambulation, and had a normal gait and station (Tr. 368). His only limitation
was that the plaintiff could not squat. Accordingly, Dr. Knizley's own
opinions are inconsistent.

In addition to this inconsistency, there are other reasons why the
law judge could discount Dr. Knizley's May 2008 form. Thus, on that form,

Dr. Knizley indicated that the plaintiff could occasionally climb ladders, ropes, and scaffolds, but that she could never crouch or stoop (Tr. 425). Those answers make no sense. Accordingly, the law judge could reasonably doubt the care with which the doctor filled out the form.

Furthermore, Dr. Knizley was an endocrinologist. The law judge has indicated that opinions outside the area of his specialty are appropriately discounted. See 20 C.F.R. 404.1527(d)(5), 416.927(d)(5). Thus, in his decision, the law judge discounted (without challenge from the plaintiff) Dr. Knizley's opinion that the plaintiff had a significant mental impairment (Tr. 369) because Dr. Knizley had no training or experience in the mental health field and his opinion was inconsistent with the entirety of the evidence (Tr. 37, see also Tr. 494). Also, during the hearing, the law judge expressed skepticism that Dr. Knizley, an endocrinologist, was telling the plaintiff about her spine (Tr. 483).

In this respect, moreover, Dr. Knizley based his opinions of limitations regarding sitting and pushing or pulling upon findings of cervical and lumbar spondylosis (Tr. 425). However, prior to the date of those opinions, there is no apparent mention of cervical spondylosis in Dr.

Knizley's notes. and there is only one passing mention of lumbar spondylosis in connection with the plaintiff's obesity (Tr. 323). Dr. Knizley's notes do not reflect any treatment for lumbar or cervical spondylosis (which is not surprising since he is an endocrinologist).

These circumstances provide solid support for the law judge's determination to discount Dr. Knizley's opinions.

Moreover, contrary to the plaintiff's assertion that there were no medical reports disagreeing with Dr. Knizley's limitations, there was a report from examining physician Dr. Robert A. Greenberg that was inconsistent with Dr. Knizley's opinions. Dr. Greenberg found that the plaintiff, while having a decreased range of motion of both knees, had a full range of motion in all other joints and spine (Tr. 374). The plaintiff had a decreased grip strength of 4/5. but her fine manipulation of the hands was normal (id.). Dr. Greenberg stated further that the plaintiff had the ability to walk unassisted, albeit with a very slow gait. He said also that the plaintiff could tandem walk and walk on her heels and toes, but could not stoop. These findings were inconsistent with Dr. Knizley's limitations based on neck and back problems, as well as fingering limitations.

-13-

In addition, the record contained an assessment by Dr. John E. Long, a non-examining reviewing physician. Dr. Long opined that the plaintiff could perform a range of light work (Tr. 413).

The law judge also refers to a non-examining reviewing opinion by a Dr. Yearwood. In fact, as the Commissioner acknowledges, David M. Yearwood was not a doctor, but what the Social Security Administration terms a single-decisionmaker (see Doc. 22, p. 6 n. 2). This error, however, does not warrant reversal. In the first place, while Yearwood was not a doctor, his opinion was subsequently concurred in by someone who is (Tr. 420). Moreover, the opinion, which was somewhat favorable to the plaintiff since it limited her standing and walking to at least two hours in an eight-hour workday (Tr. 391, 420), was not accepted by the law judge.

The plaintiff also asserts that the law judge failed to indicate the weight he assigned to the non-examining opinion of the state agency physician, Dr. Long, or to Yearwood (Doc. 18, pp. 12-13). As indicated, the law judge did not accept significant aspects of Yearwood's opinion. With respect to Dr. Long, while the law judge did not use the word "weight," he concluded that the opinion was "grounded in the evidence in the case record"

-14-

(Tr. 42). The law judge clearly accorded some weight to that opinion. On the other hand, he did not uncritically accept it, since there are meaningful differences between Dr. Long's opinion and the law judge's residual functional capacity finding (compare Tr. 39, 413-17).

The plaintiff asserts that "the ALJ should not have reached his own determination of the RFC when other contrary opinions based on substantial evidence from the claimant's treating physician were in the record" (Doc. 18, p. 14). This assertion seems to misperceive the responsibility and authority of the law judge. The law judge is assigned the duty to determine the plaintiff's residual functional capacity based upon an evaluation of all the evidence. 20 C.F.R. 404.1527(e), 404.1545, 404.1546(c), 416.927(e), 416.945, 416.946(c). Furthermore, in this case, the opinions by Dr. Knizley were properly discounted.

2. In any event, even if the law judge erred in discounting Dr. Knizley's opinions, that error would not warrant reversal.

A vocational expert answered interrogatories propounded by the law judge asking whether an individual with the plaintiff's residual functional capacity for a range of light work could perform either the plaintiff's past

work, or other work that exists in the national economy (Tr. 92, 93).  The expert responded that the individual could perform the plaintiff's past work as a data entry clerk, which is sedentary in nature, and could perform other jobs, such as receptionist, general clerk, and file clerk I (Tr. 167, 168).

At the plaintiff's request, the law judge held a supplemental hearing at which plaintiff's counsel was afforded the opportunity to cross-examine the expert.  Plaintiff's counsel asked hypothetical questions which tracked the functional limitations opined by Dr. Knizley (Tr. 522-23).  With the exception of the task of fingering, the expert testified that, if the plaintiff were limited as Dr. Knizley opined, she could still perform the job of data entry clerk (Tr. 523-24).  In other words, the law judge's discounting of Dr. Knizley's opinions makes no difference in determining whether the plaintiff could work as a data entry clerk, except for the task of fingering.

With respect to fingering, Dr. Knizley merely checked a box indicating "frequently," rather than "constantly" (or "occasionally") (Tr. 425). The vocational expert testified that the job of data entry clerk involved fingering constantly (Tr. 524). Therefore, the only opinion from Dr. Knizley that would preclude the plaintiff from working as a data entry clerk is his

assessment that the plaintiff was limited to fingering frequently, as opposed to constantly.

Importantly, Dr. Knizley provides no explanation for this limitation. As indicated, he merely checked a box and there is nothing in his brief comments that would justify the limitation (Tr. 425, see Tr. 424-26). The conclusory nature of the opinion is enough, by itself, to permit the law judge to discount it. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313-14 (11th Cir. 2007)(unpub. dec.). Moreover, there is nothing in the endocrinologist's notes that discusses problems, or treatment, of the plaintiff's hands. In fact, as noted, his earlier opinion stated that there were no motor deficits in the plaintiff's extremities (Tr. 368).

Also, a consultative examination by Dr. Greenberg a few months after the plaintiff had completed her carpal tunnel procedures found that the "[f]ine manipulation of the hands was normal" (Tr. 374).

Under these circumstances, the law judge could reasonably discount Dr. Knizley's opinion that the plaintiff's fingering was limited to frequently. The evidence certainly does not compel the conclusion that the

law judge's determination on that point was erroneous.  Consequently, since that was the only aspect of Dr. Knizley's opinions that would make a difference, the law judge's handling of Dr. Knizley's opinions would not amount to reversible error.

In addition, any claim of reversible error is foreclosed by the vocational expert's testimony that, even if the plaintiff's fingering were limited to frequently, she could nevertheless perform the job of receptionist (Tr. 524). The expert explained that, for the receptionist job, fingering is only occasional (id.). He stated that "[t]he job of receptionist would be within the parameters" of the hypothetical question based on Dr. Knizley's functional limitations (id.). Thus, even if the law judge had completely accepted Dr. Knizley's functional limitations, the plaintiff could perform the job of receptionist and, correspondingly, be found not disabled.

Significantly, the vocational expert reported that there are 78,702 receptionist jobs in Florida, and 1,100,790 in the national economy (Tr. 168). This evidence is more than sufficient to establish that the job of receptionist exists in significant numbers in the national economy. Allen v. Bowen, 816 F.2d 600 (11th Cir. 1987); Caldwell v. Barnhart, 261 Fed. Appx. 188, 190

(11th Cir. 2008); Brooks v. Barnhart, 133 Fed. Appx. 669, 670-71 (11th Cir. 2005)(unpub. dec.). The availability of this job, which the plaintiff could perform even if she were as limited as Dr. Knizley opined, defeats any contention that the law judge's handling of Dr. Knizley's opinions constituted reversible error.

It is recognized that Dr. Knizley also checked a box indicating that the plaintiff could not sustain work activity for an eight-hour work day with normal breaks for a forty-hour work week (Tr. 426). That unexplained opinion is subject to being rejected as conclusory. Regardless, it is the type of opinion that is not a medical opinion under the regulations, but an opinion on matters reserved to the Commissioner. 20 C.F.R. 404.1527(e), 416.927(e); Shaw v. Astrue, 392 Fed. Appx. 684, 687-88 (11th Cir. 2010)(unpub. dec.); Lanier v. Commissioner of Social Security, supra, 252 Fed. Appx. at 314. Consequently, it was proper for the law judge to discount it.

B. The plaintiff contends, second, that the law judge failed to categorize her impairments of carpal tunnel syndrome, liver disease, and diabetes as severe impairments (Doc. 18, p. 14). In this connection, the plaintiff argues that "the record shows that these conditions resulted in

significant limitations" (id.). The law judge's assessment in this case of her nonsevere impairments did not result in reversible error. Significantly, the law judge considered each of these impairments and gave a reasonable explanation why each of them was not severe.

The regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a), 416.921(a). The plaintiff points out that the court of appeals has stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Notably, the law judge acknowledged this principle in his decision (Tr. 33). Regardless of the alternate formulation, the standard set out in the regulations, and the one I will apply, is that a nonsevere impairment does not significantly limit a claimant's ability to do work activities. See Dixon v. Barnhart, 151 Fed. Appx. 810, 812 (11th Cir. 2005)(unpub. dec.)(the claimant

"did not have a severe impairment because he was not significantly limited by a physical or mental impairment").

Importantly, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized carpal tunnel syndrome, liver disease, and diabetes as severe impairments. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

In order to demonstrate reversible error based upon a mischaracterization regarding carpal tunnel syndrome, liver disease, or diabetes, the plaintiff must show that she had functional limitations from those conditions that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the

-21-

effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed.

Appx. 684, 690 (11th Cir. 2005)(unpub. dec.)(quoting McCruter v. Bowen,

791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional

limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213

n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

The plaintiff alleges that carpal tunnel syndrome causes pain and

weakness in her fingers and wrists that causes her to frequently drop things

and makes it difficult to open a jar or bottle (Doc. 18, pp. 15-16). The

plaintiff underwent carpal tunnel release surgery to her left hand on

September 12, 2006, and to her right hand on October 31, 2006 (Tr. 35). Her

surgeon, Dr. James B. Slattery, indicated that the procedure to her left hand

was a success (Tr. 254). With respect to her right hand, Dr. Slattery stated on

November 10, 2006, that "[h]er [right] hand parethesias have resolved and her

hand is doing very well" (Tr. 238).

The plaintiff, however, testified that the hand surgery worked for

only six months and that she currently experiences tingling and numbness in

her fingers (Tr. 480). The plaintiff supports her allegation with the report of

consulting physician Dr. Greenberg who examined the plaintiff in January

2007 (Doc. 18, p. 15; see Tr. 373).  Notably, this examination was made approximately two months after Dr. Slattery last noted she was "doing very well," and only four months after the first carpal tunnel release surgery.  Dr. Greenberg noted that the plaintiff reported she "continues to have pain and weakness in her fingers and wrists and frequently drops things" after carpal tunnel release surgery (Tr. 373).  However, as the law judge pointed out, Dr. Greenberg found that her grip strength, bilaterally, was 4/5.  He wrote further that "[n]o other motor, sensory, or reflex abnormalities were noted.  Fine manipulation of the hands was normal" (Tr. 374).  Significantly, the plaintiff points to no complaints made to any other doctor, treating or examining, of pain or weakness in her wrists and hands.

In all events, the law judge recognized a history of bilateral carpal tunnel syndrome with numbness and tingling of the hands (Tr. 35).  He also discussed Dr. Greenberg's opinion (id.).  The law judge discounted her testimony and explained why the impairment was not severe (id.):

> The claimant testified that her most severe impairment is carpal tunnel syndrome.  However, progress notes show that the claimant's right hand paresthesias and sensibility of the left hand had improved (Exhibit[s] 3F/7 and 23).  In November 2006, the claimant reported that her hand

> paresthesias had resolved and that her hand was doing very well (Exhibit 3F/7). In January 2007, examination demonstrated decreased grip strength bilaterally, but fine manipulation of the hands appeared normal (Exhibit 12F/2). The claimant testified that she was able to drive. She testified that the longest distance she traveled was from Dallas to Melrose, Florida and from Melrose, Florida to Dallas. She also reported traveling to Richmond, Virginia and assisting with the driving. The undersigned also notes that the claimant elected to type and complete the entire Activities of Daily Living questionnaire, consisting of three pages, instead of writing it, due to allegedly experiencing shakiness of her hands as a result of her carpal tunnel syndrome (Exhibit 5E). This amount of typing would require substantial motion and movements of the wrists, hands and fingers. This activity speaks clearly regarding the claimant's capabilities as opposed to her allegations of severe bilateral carpal tunnel syndrome.

The plaintiff quibbles with the portion of law judge's explanation that she was able to type a three-page questionnaire about her activities of daily living. Thus, she suggests that "[p]erhaps [typing the questionnaire] took days, but the ALJ just assumes the claimant sat down and typed the answers at one time" (Doc. 18, p. 16). However, the law judge's assumption was reasonable and the plaintiff did not adduce any controverting evidence. Further, the plaintiff has not carried her burden of demonstrating that the evidence

-24-

compels a conclusion that her carpal tunnel syndrome significantly limited her ability to perform work activities. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. Consequently, the law judge's finding is reasonable and supported by substantial evidence, so that it is not subject to being overturned.

Next, the plaintiff contends that diabetes is a severe impairment, causing tremors and fatigue and that, therefore, she must nap during the day (Doc. 18, p. 16). The law judge recognized that the medical evidence of record revealed insulin-dependent diabetes. He determined the impairment was nonsevere because the condition was "well controlled with medications" (Tr. 35). He explained further (id.):

> Examinations have failed to show any clinical evidence of diabetic retinopathy, glaucoma, peripheral neuropathy, diabetic nephropathy, cardiac disease and/or cardiopulmonary abnormalities secondary to diabetes or hypertension. Ophthalmologic examination conducted in November 2006, did not reveal evidence of diabetic retinopathy (Exhibit 9F/11). Blood tests conducted in March 2007 and July 2007 demonstrated normal glucose levels (Exhibits 8F/16 and 18). The medical evidence also shows that the claimant's hypertension has been adequately controlled with combination of Furosemide and Terazosin. In January 2008, the claimant denied experiencing any chest pain, dyspnea or increasing lower extremity edema

> (Exhibit 8F/1).  In May 2008, the claimant's
> diabetes was under excellent control.  The claimant
> denied any changes in visual acuity (Exhibit
> 20F/1).

The plaintiff supports her contention that diabetes is a severe impairment with

two visits to Dr. Knizley dated December 5, 2007, and January 3, 2008 (Tr.

313, 314).  On those dates, the plaintiff reported difficulties with

hypoglycemia and Dr. Knizley reduced her required units of insulin (id.).  No

functional limitations were noted by Dr. Knizley.  On the form he filled out

regarding the plaintiff's residual functional capacity, Dr. Knizley attributed

the disabling restrictions to impairments of cervical spondylosis, lumbar

spondylosis, arthritis of the knee, morbid obesity, and asthmatic bronchitis;

he did not identify diabetes as a limiting impairment (Tr. 424-26).  Therefore,

the record supports the finding that diabetes was a nonsevere impairment.

The plaintiff asserts that fatigue and joint pain caused by her

liver condition warrants a more restrictive residual functional capacity (Doc.

18, p. 16).  She points to a July 2007 visit to Shands Healthcare Hepatology

Clinic, where the plaintiff explained to a physicians' assistant that she was

"feeling well outside of her fatigue and arthralgia" (Tr. 337-40).  However,

at the hearing, the plaintiff stated that her liver condition is under control as

long as she is not stressed (Tr. 489). She did not testify to any symptoms from liver disease. Rather, she attributed symptoms of fatigue to the impairment of diabetes (Tr. 496).

In all events, the law judge recognized that the plaintiff had a history of fatty liver and steatohepatitis with cirrhosis (Tr. 36). The law judge concluded that her liver problems did not significantly interfere with her ability to perform work related activities and was therefore not severe (Tr. 38). He explained that determination as follows (Tr. 36):

> An endoscopy conducted on August 14, 2006, was essentially normal except for portal hypertensive and papulous gastropathy. Examination conducted on January 26, 2007, failed to show signs of advanced liver disease or portal hypertension. An ultrasound of the abdomen conducted on February 2, 2007, demonstrated evidence of fatty liver with evidence of portal hypertension manifested by splenomegaly. There were no masses noted. Moreover, a CT scan of the abdomen conducted on February 2, 2007, did not reveal evidence of portal hypertension. There were no suspicious masses or lesions within the liver (Exhibit 9F). In July 2007 and December 2007, the claimant's liver enzymes did not reveal any liver function abnormalities (Exhibit[s] 18F/1 and 16). In February 2008, the claimant's liver condition appeared stable. Examination failed to show icterus (Exhibit 20F/3). The claimant testified that, according to Dr. [Timothy Aaron] Hipp, her liver is 16% sclerotic.

The plaintiff has not pointed to evidence compelling the conclusion that the law judge's finding regarding her liver problem was wrong.   There is no opinion from any medical source, whether treating, examining, or reviewing, that sets forth any functional limitations due to liver problems.   Dr. Knizley did not mention liver disease as a medical finding to support his residual functional capacity form (Tr. 424-26).   Moreover, after reviewing her chemistry profile in January 2008, Dr. Knizley concluded that she had no liver function abnormalities and that she could participate in a Shands' diet and exercise plan (Tr. 313).

In sum, the law judge fully explained his findings that the plaintiff's problems of carpal tunnel syndrome, diabetes, and a liver condition did not amount to severe impairments.   Those findings are reasonable and supported by substantial evidence.   The plaintiff cannot prevail on this issue simply by showing that there is some evidence that would have supported a contrary finding: she must show rather that the evidence compels a different finding.   Adefemi v. Ashcroft, supra.   The plaintiff would have to show further that the impairments created functional limitations that were not

included in the residual functional capacity assessment. Such a showing is also lacking.

C. The plaintiff contends next that "[t]he Commissioner erred in failing to give any consideration to the claimant's documented impairment of severe obstructive sleep apnea" (Doc. 18, p. 16). This argument, as presented, is clearly meritless.

After the administrative hearings, but before the law judge's April 2009 decision, the plaintiff was evaluated for sleep apnea (Tr. 20-21). A complex polysomnography was performed in December 2008 and the plaintiff was diagnosed with "severe obstructive sleep apnea with significant snoring and sleep fragmentation" (Tr. 19). The plaintiff did not submit the material to the law judge, but submitted it first to the Appeals Council in October 2009 (Tr. 10). Consequently, the law judge issued his opinion on April 1, 2009, without the benefit of those records.

To the extent the plaintiff argues that the law judge erred by failing to account for sleep apnea in his decision, that contention is baseless. Only the evidence that was before the law judge is to be considered in reviewing the law judge's decision. Falge v. Apfel, 150 F.3d 1320, 1323 (11th

Cir. 1988); see also Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1266 (11th Cir. 2007).

While the Appeals Council has an obligation to consider evidence which is first submitted to it, Keaton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994), the Appeals Council in its notice denying review expressly stated that it considered the additional evidence (Tr. 6). Moreover, the plaintiff acknowledges that the Appeals Council considered the additional evidence (Doc. 18, p. 17 n. 1). Accordingly, the Appeals Council did not err by failing to consider the additional evidence that was submitted to it.

The plaintiff appears to argue that the Appeals Council erred in denying review without explaining its reasons for that action. The plaintiff cites no authority for such an obligation, and I am aware of none. The regulations certainly do not require it. See 20 C.F.R. 404.966, 416.1466, et seq. Moreover, the Eleventh Circuit has held that the Appeals Council does not have to explain its denial of review. Burgin v. Commissioner of Social Security, 2011 WL 1170733 (11th Cir. 2011)(unpub. dec.).

The plaintiff might have made an argument based upon <u>Ingram</u>
v. <u>Commissioner of Social Security Administration</u>, <u>supra</u>, that, in light of the
additional evidence, the Appeals Council erred in concluding that the law
judge's findings were not contrary to the weight of all the evidence then
contained in the record. <u>See</u> <u>Tucker</u> v. <u>Astrue</u>, 2008 WL 2811170 (M.D. Fla.
2008). The plaintiff made no such argument and, in fact, did not even
mention <u>Ingram</u>. Significantly, the scheduling Order required the plaintiff in
her memorandum to "identify with particularity the discrete grounds upon
which the administrative decision is being challenged" and to support those
challenges "by citations to the record of the pertinent facts and by citations
of the governing legal standards" (Doc. 15, p. 2). Consequently, the failure
to develop a claim by setting forth facts and a legal analysis under <u>Ingram</u>
constitutes a waiver of that claim.

D. Finally, the plaintiff argues that the law judge erred in finding
her not entirely credible "when the record clearly reveals that the Plaintiff
suffered from documented impairments causing significant limitations" (Doc.
18, pp. 17, 18). The plaintiff has pointed to evidence in the record about the
plaintiff's knee impairments in an attempt to show that the law judge erred in

his determination (id., pp. 18-19). However, the evidence in the record does not compel a conclusion that the law judge's credibility determination was erroneous.

The Eleventh Circuit has established a standard for evaluating complaints of pain. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551. 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545. 1549 n.6 (11th Cir. 1985).

The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 39). In fact, he stated the governing principles (id.). This

demonstrates that he applied the Eleventh Circuit pain standard. <u>Wilson</u> v.

<u>Barnhart</u>, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, the law judge did not wholly discount the plaintiff's

complaints of knee pain (Tr. 41-42). To the contrary, he restricted the

plaintiff to light work with limited postural movement, manipulation tasks,

and environmental exposure (<u>see</u> Tr. 39). Moreover, the law judge assumed

that the plaintiff's exertional level would be reduced to sedentary after she

had her post-hearing knee replacement surgery (Tr. 43).

In his credibility determination, the law judge gave the following

explanation for declining to credit fully the plaintiff's allegations of disabling

pain (Tr. 41):

> After considering the evidence of record, the
> undersigned finds the claimant's medically
> determinable impairments could reasonably be
> expected to produce some of the alleged symptoms,
> but the claimant's statements concerning the
> intensity, persistence and limiting effects of these
> symptoms are quite exaggerated and argumentative
> and generally inconsistent with the objective
> medical evidence, therefore not entirely credible.
> For example, the claimant has a history of bilateral
> knee degenerative joint disease. She underwent
> bilateral knee arthroscopic surgeries. The medical
> evidence shows that the claimant did relatively
> well after surgeries. In June 2006, examination

-33-

> demonstrated only little crepitus of both knees. In
> December 2006 the claimant's gait and station
> appeared normal. The claimant was not able to
> squat (probably related to obesity) but she was able
> to walk on toes and heels (Exhibit 10F/1). In
> January 2007 the claimant walked slowly but her
> gait appeared satisfactory. There was no evidence
> of instability (Exhibit 3F).

This explanation is adequate to discount the plaintiff's allegations of

disabling pain. See Heppell-Libsansky v. Commissioner of Social Security,

170 Fed. Appx. 693, 699 (11th Cir. 2006)(unpub. dec.).

Furthermore, the record supports the conclusion that the plaintiff

is not as limited as she alleged. On March 28, 2007, the plaintiff reported to

Dr. Knizley that she "is doing some care giving to a small child" (Tr. 320).

The plaintiff explained to the Social Security Administration on November

6, 2006, that twice a week she takes and picks up her seven-year-old great

niece from school located forty-five minutes away by car (Tr. 148). In

addition, she alleged that she was able to complete activities of daily living,

including cooking, laundry, ironing, cleaning, taking out the garbage,

watching movies, doing puzzles, and reading (Tr. 131-34). She testified that

she tries to go swimming to do aerobics in the pool (Tr. 503). Several weeks

after her alleged onset date of September 3, 2005, she moved from Texas to

Florida (Tr. 208). Moreover, she moved to Florida in order to give care to her mother, who was at that time undergoing treatment for a parotid gland tumor (Tr. 268, 432-33). The law judge also noted that the plaintiff had traveled to Richmond, Virginia, and had assisted with the driving (Tr. 35, 504). The plaintiff acknowledged a trip from her home to the Orlando airport, which took two and a half hours each way (Tr. 504).

In addition, the plaintiff stopped working not because she was disabled, but because she lost her job in September 2005 (Tr. 510). Consequently, she obtained unemployment benefits for six months, indicating that she was able to work (Tr. 476). Further, she told a psychologist in May 2006 that she was attempting to find a full-time position (Tr. 433). These circumstances provide additional support for the law judge's determination that the plaintiff's assertion that her knee problems rendered her totally disabled was not credible.

Moreover, it would not be sufficient for the plaintiff to show that her testimony was credible to the extent that her knee condition precluded the aspect of light work requiring an ability to walk or stand for six hours out of an eight-hour day. Her claim would nevertheless fail due to the evidence

-35-

establishing that she could perform the sedentary jobs of data entry clerk and receptionist. The plaintiff has not shown that the evidence compels a finding by the law judge that the plaintiff's testimony was credible to the extent she asserts that she cannot even perform a sedentary job.

IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON

DATED: APRIL ___, 2011      UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).